**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EMMELINE ABELLA and ROMEO ABELLA, h/w   :
  :
  :
        v.   :   NO:
  :
LM INSURANCE CORPORATION   :
  :

## <u>NOTICE OF REMOVAL</u>

AND NOW, come the defendant, LM Insurance Corporation, for the purpose only of removing this case to the United States District Court for the Eastern District of Pennsylvania and respectfully aver as follows:

1.      This is a civil action filed and now pending in the Court of Common Pleas of Philadelphia County, Pennsylvania, Docket No: 180502477.

2.      The action was initiated in the aforementioned court by the filing of plaintiffs' Complaint on May 23, 2018.   (A true and correct copy of the complaint is attached hereto as Exhibit "A.")

3.      Defendant was served with the complaint on May 29, 2018.

4.      The averments made herein are true and correct with respect to the date and time upon which suit was commenced and the date upon which this notice is being filed.

5.      This suit is of a civil nature. Plaintiffs' complaint alleges that they are residents and citizens of the Commonwealth of Pennsylvania, with their residence located at 1290 Valley Road, Jenkintown, PA 19046.   <u>See</u> Exhibit "A".   Plaintiffs do not allege any alternative state of residence.   Accordingly, upon information and belief, the Commonwealth of Pennsylvania is the state in which plaintiffs are domiciled and, therefore, the state of which plaintiffs are citizens for purposes of determining diversity.

6.     LM Insurance Corporation is now, and was at the time plaintiffs commenced this action and filed their complaint, a corporation organized under the laws of the State of Illinois with its principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116; therefore, defendant is a citizen of Illinois for purposes of determining diversity.   See 28 U.S.C. § 1332(c)(1).

7.     Defendant, LM Insurance Corporation, has simultaneously with the filing of this notice, given written notice to the plaintiffs.

8.     Defendant, LM Insurance Corporation, is also filing a copy of the instant notice of removal and all attachments thereto with the Prothonotary of the Court of Common Pleas of Philadelphia County.

9.     The Complaint asserts breach of contract and bad faith pursuant to 42 Pa.C.S.A. § 8371.   The amount in controversy is listed as to each count of the Complaint in excess of $50,000[1].

10.     In his bad faith claim, pursuant to 42 Pa. C.S.A. §8371, plaintiffs seek, in addition to compensatory damages, interest upon the amount of the contract claim against defendant at prime rate plus three percent, punitive damages, attorney's fees and costs.

11.     Defendant seeks to remove this matter to the United States District Court for the Eastern District of Pennsylvania.   Defendant asserts that the amount in controversy in this matter exceeds $75,000.   As the moving party, defendant bears the burden of proving that jurisdiction is proper in federal court.   Russ vs. State Farm Mut. Auto. Ins. Co., 961

---

[1]Moreover, defense counsel contacted plaintiffs' counsel to determine if plaintiffs would be willing to stipulate to capping damages at $75,000 to avoid removal of the matter to this Court. Plaintiffs' counsel advised that plaintiffs were not willing to do so.

F.Supp. 808, 810 (E.D. Pa. 1997).

12.     In determining whether the jurisdiction amount has been satisfied, the Court must first look at the Complaint.   Angus vs. Shiley, Inc., 989 F.2d 142, 145 (3rd Circ. 1993).

13.     The underlying lawsuit as alleged in the Complaint arises out of defendant's handling of a property damage claim to plaintiffs' property located at 1290 Valley Road, Jenkintown, PA 19046, for a loss that occurred on or about October 23, 2017.   See Exhibit "A."

14.     In Count One of the complaint, plaintiffs allege that their breach of contract damages are in excess of $177,201.56.   See ¶5, Exhibit "A."

15.     With reference to their bad faith claim pursuant to 42 Pa. C.S.A.§8371, plaintiffs also plead damages in excess of $50,000, and allege that they will seek attorney's fees.   Attorney's fees must also be included in determining the amount in controversy.   Neff vs. General Motors Corp., 163 F.R.D. 478, 482 (E.D. Pa. 1995).   It would not be unreasonable to expect that over the course of an approximate six-month litigation, counsel could incur costs and fees in an amount approaching $10,000.

16.     In addition, it is anticipated that plaintiffs will also seek punitive damages pursuant to 42 Pa. C.S.A. §8371.   Whether both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied.   Bell vs. Preferred Life Assurance Soc'y, 320 U.S. 238, 240, 88 L. Ed. 15, 64 S. Ct. 5 (1943).   The contractual amount in controversy alleged in the Complaint is in excess of $50,000 based on the allegations in the Complaint, coupled with estimated reasonable attorneys' fees, and if plaintiffs are able to sustain a finding of bad faith, although the propriety of same is disputed by moving defendant, it is not unreasonable to expect that a punitive damage award five or six times the amount in controversy could be rendered by the trier of fact.

**WHEREFORE**, LM Insurance Corporation, hereby removes this suit to this Honorable

Court pursuant to the laws of the United States in such cases made and provided.

**BENNETT, BRICKLIN & SALTZBURG LLC**

By: _Laura E. Kerns_
_____
LAURA E. KERNS, ESQUIRE
Attorney I.D. No. 87021
6000 Sagemore Drive, Suite 6103
Marlton, NJ 08053
(856) 673-3470
Email: kerns@bbs-law.com
PAMELA A. CARLOS, ESQUIRE
Attorney I.D. No. 56396
1601 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 561-4300
Email: carlos@bbs-law.com
Attorneys for Defendant,
LM Insurance Corporation

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EMMELINE ABELLA and ROMEO ABELLA, h/w** | : <br> : <br> :    **NO:** <br> : <br> : <br> : |
| v. | |
| **LM INSURANCE CORPORATION** | |

## NOTICE

**TO:**    Roger J. Harrington, Esquire
Harrington & Caldwell, P.C.
One Penn Center, Suite 1055
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103

PLEASE TAKE NOTICE that defendant, LM Insurance Corporation, has filed in this Court a verified Notice for Removal of the State Court action, <u>Emmeline Abella and Romeo Abella v. LM Insurance Corporation</u>, now pending in the Court of Common Pleas of Philadelphia County, Pennsylvania, Case No: 180502477.

PLEASE TAKE FURTHER NOTICE that a certified copy of the Notice of Removal will be filed with the Prothonotary of the Court of Common Pleas of Philadelphia County, Pennsylvania.

PLEASE BE ADVISED that by virtue of 28 U.S.C. §1446(f), the State action is now removed to this Court.   The State Court has no further jurisdiction over this action and you should proceed no further in that Court or under its authority.

**BENNETT, BRICKLIN & SALTZBURG LLC**

**By:**     *Laura E. Kerns*
LAURA E. KERNS, ESQUIRE
Attorney I.D. No. 87021
6000 Sagemore Drive, Suite 6103
Marlton, NJ 08053
(856) 673-3470
Email: kerns@bbs-law.com

PAMELA A. CARLOS, ESQUIRE
Attorney I.D. No. 56396
1601 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 561-4300
Email: carlos@bbs-law.com
Attorneys for Defendant,
LM Insurance Corporation

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EMMELINE ABELLA and ROMEO    : 
ABELLA, h/w    :
   :
   :    **NO:**
v.    :
   :
LM INSURANCE CORPORATION    :
   :

**DEFENDANT'S CERTIFICATION OF FILING OF**
**COPY OF NOTICE OF REMOVAL WITH STATE COURT**

    Laura E. Kerns, Esquire, being duly sworn according to law, deposes and says that she is a member with the law firm of Bennett, Bricklin & Saltzburg LLC, attorneys for defendant, LM Insurance Corporation, A Subsidiary of Liberty Mutual Insurance Company.

    That she did direct the filing with the Prothonotary of the Court of Common Pleas of Philadelphia County a copy of the Notice of Removal, attached hereto, said filing to be made on June 27, 2018.


BY: _____

LAURA E. KERNS, ESQUIRE
Bennett Bricklin Saltzburg, LLC
Attorney for Defendant
Attorney I.D. No. 87021
6000 Sagemore Drive, Suite 6103
Marlton, NJ 08053
(856) 673-3470
Email: kerns@bbs-law.com


Sworn to and subscribed
before me this 27th day
of June, 2018.

_____
NOTARY PUBLIC
SOPHIA M. HEINZE
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES JUNE 9, 2023

## AFFIDAVIT

I, Laura E. Kerns, Esquire, being duly sworn according to law, do hereby depose and state that I am the attorney for Defendant, LM Insurance Corporation, the Petitioner in the foregoing Notice of Removal, that I have been duly authorized by the Petitioner to execute this Affidavit, that I am familiar with the facts involved in this matter, and that the allegations set forth in the foregoing Notice of Removal are true and correct to the best of my knowledge, information and belief.

**LAURA E. KERNS, ESQUIRE**

**DATE:**    June 27, 2018

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EMMELINE ABELLA and ROMEO : 
ABELLA, h/w :
                         :   NO:
        v. :

LM INSURANCE CORPORATION :
                         :

### CERTIFICATE OF SERVICE

Laura E. Kerns, Esquire, being duly sworn according to law, deposes and says that she is an attorney with the law firm of Bennett, Bricklin & Saltzburg LLC, attorneys for defendant, LM Insurance Corporation, and that she certifies that a true and correct copy of this Removal Petition was filed electronically and is available for viewing and downloading from the Electronic Case filing system which constitutes service upon the following counsel of record:

Roger J. Harrington, Esquire
Harrington & Caldwell, P.C.
One Penn Center, Suite 1055
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103

BENNETT, BRICKLIN & SALTZBURG LLC

By: _Laura E. Kerns_____

LAURA E. KERNS, ESQUIRE
Attorney I.D. No. 87021
6000 Sagemore Drive, Suite 6103
Marlton, NJ 08053
(856) 673-3470
Fax: (856) 751-5281
Email: kerns@bbs-law.com
Attorney for Defendant

Sworn to and subscribed
before me this 27th    day
of June, 2018.

_SHeinze_____

NOTARY PUBLIC
SOPHIA M. HEINZE
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES JUNE 9, 2023

# EXHIBIT "A"

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

MAY 2018

E-Filing Number: 1805093400

002477

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| EMMELINE  ABELLA | LM INSURANCE CORPORATION |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1290 VALLEY ROAD<br>JENKINTOWN PA 19046 | 175 BERKELEY STREET<br>BOSTON MA 02116 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| ROMEO  ABELLA | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1290 VALLEY ROAD<br>JENKINTOWN PA 19046 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 1 | ☒ Complaint   ☐ Petition Action   ☐ Notice of Appeal<br>☐ Writ of Summons   ☒ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less | ☐ Arbitration | ☒ Mass Tort | ☐ Commerce | ☐ Settlement |
| ☒ More than $50,000.00 | ☐ Jury | ☐ Savings Action | ☐ Minor Court Appeal | ☐ Minors |
| | ☒ Non-Jury | ☐ Petition | ☐ Statutory Appeals | ☐ W/D/Survival |
| | ☐ Other: | | | |

CASE TYPE AND CODE

10 - CONTRACTS OTHER

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | FILED<br>PRO PROTHY<br><br>MAY 23 2018<br><br>A. SILIGRINI | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>YES          NO |
|---|---|---|

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: EMMELINE  ABELLA , ROMEO  ABELLA

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| ROGER J. HARRINGTON | 1617 JOHN F. KENNEDY BLVD.<br>ONE PENN CENTER<br>SUITE 1055<br>PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (215)751-1135 | (215)751-1147 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 9885 | office@harringtoncaldwellpc.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| ROGER HARRINGTON | Wednesday, May 23, 2018, 12:49 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

HARRINGTON & CALDWELL, P.C.
By: ROGER J. HARRINGTON, ESQUIRE
IDENTIFICATION NUMBER: 09885
ONE PENN CENTER, SUITE 1055
1617 JOHN F. KENNEDY BLVD.
PHILADELPHIA, PA 19103
(215) 751-1135
(215) 751-1147 (FACSIMILE)
Office@harringtoncaldwellpc.com

ATTORNEY FOR PLAINTIFFS

Filed and Attested by the
Office of Judicial Records
25 MAY 2018

EMMELINE ABELLA and
ROMEO ABELLA, h/w
1290 Valley Road
Jenkintown, PA 19046

vs.

LM INSURANCE CORPORATION
175 Berkeley Street
Boston, MA 02116

}

IN THE PHILADELPHIA
COUNTY COURT OF
COMMON PLEAS

TERM,

NO.:

MAJOR NON JURY

## COMPLAINT IN CIVIL ACTION

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. YOU SHOULD TAKE THIS NOTICE TO A LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH THE INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE. Philadelphia Bar Association Lawyer Referral and Information Service 1101 Market Street, 11th Floor Philadelphia, Pennsylvania 19107 (215) 238-6333 | NOTIFICACION IMPORTANTE Usted se encuentra en estado de rebeldía por no haber presentado una comparecencia escrita, ya sea personalmente o por abogado y por no haber radicado por escrito con este Tribunal sus defensas u objeciones a los reclamos formulados en contra suyo. Al no tomar la acción debida dentro de diez (10) días de la fecha de esta notificación, el Tribunal podrá, sin necesidad de comparecer usted en corte u oír prueba alguna, dictar sentencia en su contra y usted podría perder bienes u otros derechos importantes. Debe llevar esta notificación a un abogado inmediatamente. Si usted no tiene abogado, o si no tiene dinero suficiente para tal servicio, vaya en persona o llame por telefono a la oficina, nombrada para averiguar si puede conseguir asistencia legal. Asociacion de Licenciados de Filadelfia Servicio de Referencia e Información Legal 1101 Market Street, 11th Floor Filadelfia, Pennsylvania 19103 215-238-6333 |

Case ID: 180502477

HARRINGTON & CALDWELL, P.C.
By: ROGER J. HARRINGTON, ESQUIRE          ATTORNEY FOR PLAINTIFFS
IDENTIFICATION NUMBER: 09885
ONE PENN CENTER, SUITE 1055
1617 JOHN F. KENNEDY BLVD.
PHILADELPHIA, PA 19103
(215) 751-1135
(215) 751-1147 (FACSIMILE)
Office@harringtoncaldwellpc.com

EMMELINE ABELLA and                        IN THE PHILADELPHIA
ROMEO ABELLA, h/w                          COUNTY COURT OF
1290 Valley Road                           COMMON PLEAS
Jenkintown, PA 19046

}

          vs.                              TERM,

LM INSURANCE CORPORATION                   NO.:
175 Berkeley Street
Boston, MA 02116                           MAJOR NON JURY

## COMPLAINT IN CIVIL ACTION

### COUNT ONE
### (Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing)

1. Plaintiffs are adult married individuals who at all times relevant hereto owned and occupied the dwelling located at the above captioned address.

2. Defendant is an insurance company regularly engaged in the business of insurance in Philadelphia County and it maintains offices at the above-captioned address.

3. Plaintiffs entered into a contract of insurance with defendant whereby in exchange for good and valuable consideration defendant issued to plaintiffs an all physical risk homeowners insurance policy insuring plaintiffs' aforesaid property. See the policy attached as Exhibit A.

4. On or about October 23, 2017 while the policy was in full force and effect, plaintiffs' residence premises and personal property sustained sudden and accidental physical loss and damage caused by oily smoke, oily soot and oily discharge from their heating system, a covered peril under the policy of insurance.

5. Plaintiffs' estimated losses suffered as a result of this occurrence include the following:

        a) The cost to clean the dwelling in the amount of $54,523.88;

        b) The cost to replace any part of the dwelling not successfully cleaned, to be determined;

        c) The cost to clean the contents in the amount of $87,610.68;

        d) The cost to replace any content items which are not successfully cleaned, to be determined;

        e) The cost to restore artwork in the approximate amount of $34,000.00;

        f) The cost clean the piano in the amount of approximately $400.00;

        g) The cost to clean the duct work in the amount of $667.00;

and, possibly additional loss and damage including any loss that results from an inability to use portions of their residence premises while repairs take place.

6. Plaintiffs complied with all conditions precedent to recovery including without limitation providing prompt notice of loss, exhibiting damaged property as often as reasonably requested, submitting estimates of loss and damages, and in other ways to be revealed during discovery, and despite demand defendant has unfairly and without conducting a reasonable investigation denied full indemnity to plaintiffs pursuant to the policy thereby breaching the policy.

2

7. Plaintiffs incorporate by reference the facts plead in the statutory bad faith claim set forth below as it forth herein at length.

8. As a result of defendant's refusal to abide by the terms of the policy and indemnify plaintiffs' loss and damage in accordance with the policy which was occasioned by a covered peril defendant knew or should have known that plaintiffs' only recourse was to file suit and thereby incur attorney fees and costs of suit including expert witness fees.

9. These compensatory damages suffered by plaintiffs were reasonably foreseeable to defendant if defendant failed to indemnify plaintiffs for covered loss and damage.

10. Defendant owes a duty of good faith and fair dealing to its insureds under the insurance contract.

11. Consistent with defendant's obligation to deal fairly and in good faith with its insureds is defendant's duty to properly investigate claims and properly pay claims which are covered under the policy.

12. As a result of defendant's breach of its duty of fair dealing and good faith the insureds were forced to file suit and incur the foreseeable, compensatory losses of attorney's fees, court costs and expert witness fees.

13. Defendant acted unreasonably and/or negligently in the handling of this claim by unfairly and inadequately investigating plaintiffs' loss and then on the basis of its inadequate investigation unfairly denying indemnity to the plaintiffs for this clearly covered loss.

3

Case ID: 180502477

WHEREFORE, plaintiffs pray for judgment against defendant for damages in excess of $50,000.00 plus interest and cost and attorney fees.

## COUNT TWO
### (Statutory Bad Faith)

14. Plaintiffs incorporate by reference paragraphs one (1) through thirteen (13) above as if set forth herein at length.

15. Defendant's failure to fully indemnify plaintiffs as described in Count One above incorporated herein by reference is in knowing and reckless disregard of the facts of the loss and defendant's bad faith conduct includes but may not be limited to the following:

a) Defendant, without reasonable basis and in reckless disregard of the facts, has refused to fully indemnify the plaintiffs the cost to restore and/or replace their damaged property among other deficiencies in the defendant's building estimate;

b) Defendant is required by Pennsylvania law to conduct a reasonable investigation and defendant with a mindset of minimizing plaintiffs' loss did not do so as demonstrated its grossly inadequate indemnity;

c) Defendant did not conduct a reasonable investigation in violation of its duty to do so;

d) Defendant did not promptly respond to inquiries made on behalf of plaintiffs in a timely manner in violation of its duty to do so;

e) Defendant intentionally and/or recklessly failed to timely perform its duty to perform a reasonable investigation;

f) Defendant failed in its duty to provide timely written status reports to plaintiffs and/or their representatives;

g) Defendant received a personal property estimate to clean their insureds' personal property in December of 2017, but has failed to pay same, failed to advise why all the work indicated is not necessary and failed to provide any competing and/or alternative estimate all of which has caused defendant's insureds inconvenience and annoyance and has prevented timely remediation of the plaintiffs' contents damage;

Case ID: 180502477

h) Defendant failed to prepare a personal property estimate;

i) Defendant, in blatant disregard of the fact that plaintiffs were represented by a public adjuster, directly contacted plaintiffs and questioned plaintiffs on whether their art works were "really" damaged to which question plaintiffs replied yes and despite defendant's direct contact with plaintiffs and their affirmation that yes, their artwork was "really" damaged, defendant did nothing to change its position on plaintiffs' loss and damage.

WHEREFORE, plaintiffs demand judgment against defendant for damages under 42 Pa. C.S.A. Section 8341 in an amount in excess of $50,000.00 exclusive of interest and costs.

RESPECTFULLY SUBMITTED,
Harrington & Caldwell, P.C.
Attorneys for Plaintiffs

By:

ROGER J. HARRINGTON, ESQUIRE

Case ID: 180502477

## VERIFICATION

We, Emmeline Abella and Romeo Abella, verify that we are the plaintiffs in this action and we hereby verify that the statements made in the foregoing Complaint in Civil Action are based on information furnished to counsel and/or information which has been gathered by counsel in the course of this lawsuit. The language is that of counsel and not of the signer. I verify that I have read the foregoing responses and the facts contained therein are true and correct to the best of my knowledge, information and belief.

This Verification is made pursuant to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsifications to authorities.

EMMELINE ABELLA

ROMEO ABELLA

AB-3008

Case ID: 180502477

# Exhibit A

# Complaint in Civil Action

Case ID: 180502477



**Questions about your Policy?**
Call 1-866-500-8377

**Policy Number:**
H35-281-167954-40 7 3

**Report a Claim:**
1-800-2CLAIMS



**ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

## Policy Declarations
## Total 12 Month Premium:   $2,352.00

Your discounts and benefits have been applied. Includes state sales tax and local surcharge whe

### Insurance Information

| | | | |
|---|---|---|---|
| Named Insured: | Emmeline Abella<br>Roméo Abella | Policy Number: | H35-281-167954-4 |
| Mailing Address: | 1290 Valley Rd<br>Jenkintown PA 19046-1248 | Policy Period: | 04/26/2017-04/26/<br>standard time at the<br>Named Insured at In |
| Insured Location: | Same as Mailing address above | Declarations Effective: | 04/26/2017 |

### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your total policy premium.

* Inflation Protection Discount
* Multi Policy Discount - Auto
* Basic Home Safety
* Smart Home

* Early Shopper Discount
* Mortgagee Billing Discount

1.

A

Case ID: 180502477



**Want to Add a Coverage?**
Call 1-866-500-8377 to talk to your agent about the availability of this coverage and whether it meets your needs.

**Policy Number:**
H35-281-167954-40 7 3

**Report a Claim:**
1-800-2CLAIMS

## Coverage Information continued

### POLICY DEDUCTIBLES

Losses covered under Section I are subject to a deductible of: $1,000

Total Standard Policy with HomeProtector Plus ™

| ADDITIONAL COVERAGES | | DEDUCTIBLE |
|---|---|---|
| Credit Card, Fund Transfer Card, Forgery | | $ |
| Backup Of Sewer And Sump Pump Overflow Cov | $ 1,000 | $ |
| Identity Fraud Expense | $ 250 | $ |
| Coverage E increased limit | | |
| Total Additional Coverages | | |

### SCHEDULED PERSONAL PROPERTY

Personal Property
  Jewelry                                                                    $

Total Scheduled Personal Property

Total 12 Month Policy Pr

### Additional Coverages and Products Available *

We've reviewed your policy and have identified additional optional coverages and product protection. Talk to your agent about purchasing the following coverages and products and

1

Case ID: 180502477

HOMEOWNERS
HO 00 03 04 91

# HOMEOWNERS 3
## SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:

   a. The one family dwelling, other structures, and grounds; or

   b. That part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

 Copyright, Insurance Services Office, Inc., 1990

Case ID: 180502477

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – Dwelling

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B – Other Structures

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### COVERAGE C – Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1000 on trailers not used with watercraft.

5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms.

7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

 Copyright, Insurance Services Office, Inc., 1990 Case ID: 180502477

11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

   a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

   b. Is away from the "residence premises"; and

   c. Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

   a. Accessories and antennas; or

   b. Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land conveyances. This includes:

   a. Their equipment and accessories; or

   b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

     (1) Accessories or antennas; or

     (2) Tapes, wires, records, discs or other media;

     for use with any electronic apparatus.

   The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a. Used to service an "insured's" residence; or

   b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

   a. Books of account, drawings or other paper records; or

   b. Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D – Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

   a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

   b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

   Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

   **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

Copyright, Insurance Services Office, Inc., 1990

The periods of time under **1.**, **2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of;

   a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

   a. Your tree(s) felled by the peril of Windstorm or Hail;

   b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

   c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

   provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

   This coverage:

   a. Does not increase the limit of liability that applies to the covered property;

   b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I – CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

   This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to $500 for:

   a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

Copyright, Insurance Services Office, Inc., 1990
Case ID: 180502477

We do not cover use of a credit card or fund transfer card:

a. By a resident of your household;

b. By a person who has been entrusted with either type of card; or

c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A – DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. Perils Insured Against in COVERAGE C. – PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

b. Hidden decay;

c. Hidden insect or vermin damage;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**

We cover:

a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

a. **Fire or lightning.**

b. **Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

c. **Explosion.**

d. **Riot or civil commotion.**

e. **Aircraft,** including self-propelled missiles and spacecraft.

f. **Vehicles.**

g. **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

h. **Vandalism or malicious mischief.**

i. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

(3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises;"

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

---

## SECTION I – PERILS INSURED AGAINST

**COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

2. Caused by:

 Copyright, Insurance Services Office, Inc., 1999 Case ID: 180502477

a. Freezing of a plumbing, heating, air condition-ing or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoc-cupied or being constructed, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water;

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1) Fence, pavement, patio or swimming pool;

(2) Foundation, retaining wall, or bulkhead; or

(3) Pier, wharf or dock;

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the con-struction until the dwelling is finished and occu-pied;

d. Vandalism and malicious mischief if the dwell-ing has been vacant for more than 30 consecu-tive days immediately before the loss. A dwell-ing being constructed is not considered vacant;

e. Any of the following:

(1) Wear and tear, marring, deterioration;

(2) Inherent vice, latent defect, mechanical breakdown;

(3) Smog, rust or other corrosion, mold, wet or dry rot;

(4) Smoke from agricultural smudging or indus-trial operations;

(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes mate-rials to be recycled, reconditioned or re-claimed;

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

(7) Birds, vermin, rodents, or insects; or

(8) Animals owned or kept by an "insured."

If any of these cause water damage not other-wise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprin-kler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appli-ance from which this water escaped.

3. Excluded under Section I – Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

COVERAGE C – PERSONAL PROPERTY

We insure for direct physical loss to the property de-scribed in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS.

1. Fire or lightning.

2. Windstorm or hail.

This peril does not include loss to the property con-tained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust en-ters through this opening.

This peril includes loss to watercraft and their trail-ers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed build-ing.

3. Explosion.

4. Riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke, meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. Vandalism or malicious mischief.

9. Theft, including attempted theft and loss of prop-erty from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

a. Committed by an "insured";

b. In or to a dwelling under construction, or of materials and supplies for use in the construc-tion until the dwelling is finished and occupied; or

 Copyright, Insurance Services Office, Inc., 1990 Case ID: 180502477

c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

This peril does not include loss caused by theft that occurs off the "residence premises" of:

a. Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there; Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

c. Trailers and campers.

10. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I—EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

(1) Fire;

(2) Explosion; or

(3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

c. **Water Damage,** meaning:

(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) Water which backs up through sewers or drains or which overflows from a sump; or

 Copyright, Insurance Services Office, Inc., 1999 Case ID: 180502477

(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect**, meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War**, including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard**, to the extent set forth in the Nuclear Hazard Clause of SECTION I – CONDITIONS.

h. **Intentional Loss**, meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions**. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective**:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

---

## SECTION I – CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. Give prompt notice to us or our agent;

b. Notify the police in case of loss by theft;

c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

Copyright, Insurance Services Office, Inc., 1990

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in 2.e. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500;

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

  Copyright, Insurance Services Office, Inc., 1990  Case ID: 180502477

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

 Copyright, Insurance Services Office, Inc. 1990 Case ID: 180502477

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II – LIABILITY COVERAGES

### COVERAGE E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

### COVERAGE F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

b. Is caused by the activities of an "insured";

c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II – EXCLUSIONS

1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to "bodily injury" or "property damage":

a. Which is expected or intended by the "insured";

b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

Copyright, Insurance Services Office, Inc., 1999
Case ID: 180502477

c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

  (1) On an occasional basis if used only as a residence;

  (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

  (3) In part, as an office, school, studio or private garage;

d. Arising out of the rendering of or failure to render professional services;

e. Arising out of a premises:

  (1) Owned by an "insured";

  (2) Rented to an "insured"; or

  (3) Rented to others by an "insured";

  that is not an "insured location";

f. Arising out of:

  (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

  (2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

  (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

  This exclusion does not apply to:

  (1) A trailer not towed by or carried on a motorized land conveyance.

  (2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

    (a) Not owned by an "insured"; or

    (b) Owned by an "insured" and on an "insured location";

  (3) A motorized golf cart when used to play golf on a golf course;

  (4) A vehicle or conveyance not subject to motor vehicle registration which is:

    (a) Used to service an "insured's" residence;

    (b) Designed for assisting the handicapped; or

    (c) In dead storage on an "insured location";

g. Arising out of:

  (1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

  (2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

  (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

  (1) That are not sailing vessels and are powered by:

    (a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

    (b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

    (c) One or more outboard engines or motors with 25 total horsepower or less;

    (d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

    (e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

      (i) You acquire them prior to the policy period; and

        (a) You declare them at policy inception; or

        (b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

      (ii) You acquire them during the policy period.

      This coverage applies for the policy period.

  (2) That are sailing vessels, with or without auxiliary power:

    (a) Less than 26 feet in overall length;

    (b) 26 feet or more in overall length, not owned by or rented to an "insured."

   Copyright, Insurance Services Office, Inc., 1990

(3) That are stored;

h. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an aircraft;

(2) The entrustment by an "insured" of an aircraft to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model of hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs; However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g., and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

2. **Coverage E – Personal Liability**, does not apply to:

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) That directly relate to the ownership, maintenance or use of an "insured location"; or

(b) Where the liability of others is assumed by the "insured" prior to an "occurrence";

unless excluded in (1) above or elsewhere in this policy;

b. "Property damage" to property owned by the "insured";

c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

d. "Bodily injury" to any person eligible to receive any benefits:

(1) Voluntarily provided; or

(2) Required to be provided;

by the "insured" under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

e. "Bodily injury" or "property damage" for which an "insured" under this policy:

(1) Is also an insured under a nuclear energy liability policy; or

(2) Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) American Nuclear Insurers;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F – Medical Payments to Others**, does not apply to "bodily injury":

a. To a "residence employee" if the "bodily injury":

(1) Occurs off the "insured location"; and

(2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

Copyright, Insurance Services Office, Inc., 1990

Case ID: 180502477

b. To any person eligible to receive benefits:

(1) Voluntarily provided; or

(2) Required to be provided;

under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

c. From any:

(1) Nuclear reaction;

(2) Nuclear radiation; or

(3) Radioactive contamination;

all whether controlled or uncontrolled or how-ever caused; or

(4) Any consequence of any of these; or

d. To any person, other than a "residence em-ployee" of an "insured," regularly residing on any part of the "insured location."

## SECTION II -- ADDITIONAL COVERAGES

We cover the following in addition to the limits of liabil-ity:

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   b. Premiums on bonds required in a suit we de-fend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or de-fense of a claim or suit; and

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of li-ability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily in-jury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

   We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I of this policy;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

e. Arising out of:

   (1) A "business" engaged in by an "insured";

   (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or

   (3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

      This exclusion does not apply to a motor-ized land conveyance designed for recrea-tional use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or asso-ciation of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not ex-cluded under Section II of this policy; or

   b. Liability for an act of a director, officer or trus-tee in the capacity as a director, officer or trus-tee; provided:

      (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

      (2) The director, officer or trustee serves with-out deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property own-ers.

   This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

Copyright, Insurance Services Office, Inc., 1990

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II – Coverage E – Personal Liability Exclusion 2.a.(1);

2. Condition 1. Policy Period, under SECTIONS I AND II – CONDITIONS.

## SECTION II – CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and "insured";

      (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

      (3) Names and addresses of any claimants and witnesses;

   b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

   c. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

      (3) With the conduct of suits and attend hearings and trials; and

      (4) To secure and give evidence and obtain the attendance of witnesses;

   d. Under the coverage – Damage to Property of Others – submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

   e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person – Coverage F – Medical Payments to Others.**

   The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim – Coverage F – Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us:

 Copyright, Insurance Services Office, Inc., 1990

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance — Coverage E – Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II – CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

   relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period, stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

      (b) If the risk has changed substantially since the policy was issued.

      This can be done by letting you know at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

Copyright, Insurance Services Office, Inc., 1990

Case ID: 180502477

8.   **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9.   **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a.   We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b.   "Insured" includes:

(1)   Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2)   With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, Insurance Services Office, Inc., 1994

Case ID: 180502477



# AMENDATORY MOLD, FUNGUS, WET ROT, DRY ROT, BACTERIA, OR VIRUS ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**DEFINITIONS**

The following definition is added to the DEFINITIONS section:

> 9. "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" means any type or form of fungus, rot, virus or bacteria.  This includes mold, mildew and any mycotoxins (meaning a toxin produced by a fungus), other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or viruses.

**SECTION I – PROPERTY COVERAGES**

**Additional Coverages**

The following Additional Coverage is added:

> 11. Remediation of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" Resulting Directly From Any Covered Loss
>
> We will pay, up to the Additional Coverage – Mold Limit of Liability shown below, for the "Remediation" of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" resulting directly from any covered loss.
>
> "Remediation" means the reasonable and necessary treatment, containment, decontamination, removal or disposal of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" as required to complete the repair or replacement of property, covered under Section I of the policy, that is damaged by any covered peril insured against, and also consists of the following:
>
> > 1. The reasonable costs or expense to remove, repair, restore, and replace that property including the costs to tear out and replace any part of the building as needed to gain access to the "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"; and
> >
> > 2. the reasonable costs or expense for the testing or investigation necessary to detect, evaluate or measure "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"; and
> >
> > 3. any loss of fair rental value, or reasonable increase in additional living expenses, that is necessary to maintain your normal standard of living, if "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" resulting directly from any covered loss makes your residence premises uninhabitable.

We will pay no more than the Additional Coverage – Mold Limit of Liability shown below for the "Remediation" of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" resulting directly from any covered loss during the policy period, regardless of the number of locations under the policy to which this endorsement is attached, the number of persons whose property is damaged, the number of "insureds," or the number of losses or claims made.

If there is a covered loss or damage to covered property, not caused, in whole or in part, by "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus," loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

Case ID: 180502477



## ADDITIONAL COVERAGE – MOLD LIMIT OF LIABILITY

| Mold Limit of Liability: | SECTION I | Aggregate Limit | $5,000 |

This Additional Coverage does not increase the limits of liability under Section I of the policy as shown in the Declarations.

### SECTION I – EXCLUSIONS

Exclusion 1.i. is added:

    i.  Except as provided by Additional Coverage 11., loss consisting of or caused by "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus." is excluded, even if resulting from a peril insured against under Section I. We do not cover "Remediation" of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus," even if resulting from a peril insured against under Section I, except as provided by Additional Coverage 11.

### SECTION II – EXCLUSIONS

Coverage E – Personal Liability and Coverage F – Medical Payments to Others
Exclusion 1.m. is added:

    m.  Arising out of or aggravated by, in whole or in part by, "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus."

This endorsement takes precedence over all other endorsements attached to your policy.

Case ID: 180502477



## HOMEPROTECTOR PLUS ENDORSEMENT

### A.  INCREASED SPECIAL LIMIT OF LIABILITY - JEWELRY, WATCHES, FURS, PRECIOUS AND SEMI-PRECIOUS STONES

Section I, Coverage C - Personal Property.  Special Limits of Liability.  Paragraph 5 is replaced with:

5.  Jewelry, watches, furs, precious and semi-precious stones are insured for accidental direct physical loss or damage.  The following exclusions and limitations apply:

    a.  $2500 for loss by theft, subject to a maximum of $1000 for any one article.

    b.  The limit of liability stated in the declarations page for Coverage C, for loss caused by perils named under Coverage C of this policy, other than theft.

    c.  $2500 for loss caused by perils not named and not excluded in this policy, subject to a maximum of $1000 for any article.

    d.  We do not cover loss or damage caused by mechanical breakdown, wear and tear, gradual deterioration, insects, vermin or inherent vice.

### B.  REPLACEMENT COST PROVISION - DWELLING AND PERSONAL PROPERTY

You must meet the following additional Section I Condition for this provision to apply:

17.  Additions or Changes to Dwelling - Notice to Company.  You must inform us within 90 days of the start of any additions, alterations or improvements to the dwelling that will increase the replacement cost of the dwelling by $5,000 or more.

If you meet Condition 17, then Section I, Condition 3. Loss Settlement, is deleted and replaced by the following:

3.  Loss Settlement.  Covered property losses are settled as follows:

    a.  The applicable limit of liability for Buildings under Coverage A or B is the replacement cost, after application of deductible and without deduction for depreciation, subject to the following:

        (1)  We will pay the cost of repair or replacement, but not exceeding:

            (a)  The replacement cost of that part of the building damaged using like construction on the same premises and intended for the same occupancy and use;

            (b)  With respect to Coverage A, an amount not exceeding 20% greater than the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;

            (c)  With respect to Coverage B, the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;

            (d)  The amount actually and necessarily spent to repair or replace the damage.

        (2)  We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.  Once actual repair or replacement is complete, we will settle the loss according to the provisions of a.(1) above.

        However, if the cost to repair or replace the damage is both:

            (a)  Less than 5% of the amount of insurance in this policy on the building;

               and

            (b)  Less than $2500;

Case ID: 180502477